And welcome, Seth. And in first case, or afternoon course, people be graded. That's 4-1-0-0-1-5-5 for the appellant. Charles Hoffman for the appellee. Thomas Donaghy. You may proceed. Thank you, Justice Turner. Good afternoon, Your Honors. I represent the appellant, Ms. Chartrese Grayned. Ms. Grayned was convicted of burglary and retail theft and sentenced to three years in prison. The charges arose from an incident in which it was alleged that Ms. Grayned and several other women stole merchandise from a T.J. Maxx store in Decatur, Illinois. We've raised one issue on appeal, and that is whether Ms. Grayned was deprived of her right to a fair jury trial when prosecution witnessed Decatur Police Officer Rolfes testified in violation of the trial court's eliminate order that Ms. Grayned was part of a retail theft ring that had hit his store several times before. The trial judge sustained defense counsel's objection, but the court denied the defendant's motion for mistrial. There's no question that an error occurred here, and I think there's no question that the defendant was prejudiced as a result of that error. The only real question in this appeal is whether the resulting prejudice was cured by the trial court's remedial action in sustaining defense counsel's objection, and we submit the answer to that question is no. This is one of those rare cases, and there are such cases, in which there is no remedial action that the trial court could have taken that would have done away with the resulting prejudice. The prejudice in this case was irreparable, and here's why. The state's theory in this case was that Ms. Grayned was either guilty as a principal, because she stole something herself, or based on accountability, because she knew the other women were going to steal something. And the prosecutor argued, and the jury was instructed, that even if Ms. Grayned only knew that the other women had the intent to commit a theft when they entered the store, she was just as guilty as they were, even if she didn't steal anything. And in sharp contrast to the state's theory of guilt, the defendant's theory of innocence, which was actually supported by Ms. Grayned's trial testimony, was that I didn't steal anything from the store, and I didn't know the other women were going to steal anything from the store. Officer Rolfe's testimony, that Ms. Grayned was part of a retail theft ring with these other women that had hit the TJ Maxx store before, completely undermined that defense theory of innocence. Obviously, if Ms. Grayned was part of a retail theft ring, she knew what the women were there to do. They were there to steal from the TJ Maxx store. Also, I think, based on this record, the source of the inadmissible testimony magnified the prejudice. This is a police officer testifying about what he was told by a store security officer. I think jurors would assume, as anybody would, that if anyone knew who was involved in a retail theft ring in Decatur, it would be a store security officer, an Indicator police officer. So this chance comment is made. The objection is sustained immediately. There's no reference to it in the argument, right? There isn't. It's tough being on a jury when you don't know anything about legal proceedings to begin with, but the idea that the four or five words are going to somehow stick in the jury's mind is just sort of amazing. Well, Justice Cook, I think you have to understand that this was a very short trial. It was only a day and a half. It wasn't like this was something that had happened days and days before the jury was about to deliberate. And I think these four or five words were the most prejudicial four or five words that could have occurred in this case, where the prosecution is arguing that Ms. Granite is accountable for the acts of the other woman, and where Ms. Granite is saying, I didn't know they were going to steal anything. They had a video of her taking off price tags, didn't they? They had a video. And if you watch the video, Justice Cook, you cannot tell what she's doing with the pair of shoes by watching the video. But of course, the store person who was watching it had a better view. He did have a better view, but his view was also on a – he didn't see this in person. He saw it on a tiny closed security monitor. But his view didn't have that delay. It didn't. And of course – The tape that we observed had. Correct, but what the jury saw was the tape. Right. That means the jury had to rely on the credibility and ability to observe of the store security officer, and he could have been mistaken. And I think it's important to remember, we're not arguing reasonable doubt. We're not arguing that the evidence wasn't sufficient to convict Ms. Granite. We're arguing that the evidence was not overwhelming so as to render the error harmless. If they believed him, why wouldn't it be overwhelming? If they believed – What he testified to. I think the problem is that the inadmissible evidence may have tipped the balance into the jury believing the witness. You're misunderstanding my question. I'm sorry, Justice. If they believed the testimony of the witness who described what he saw on the video consistent with everything else that happened in this case, why wouldn't that be enough to make this an overwhelming case? Because, first of all, he didn't see Ms. Granite actually steal anything. All he said was, it looked to me like she was taking a security device off. And I think when the jury is considering that testimony, the problem here is, what weighs into the mix is the jury having heard that Ms. Granite was part of a retail theft ring. And I can see the jurors saying, well, you know why I believe the store security officer? Because she's part of a retail theft ring. So, of course, he wasn't mistaken. We're not arguing he's lying, Judge. We're arguing he was mistaken. And I think, as we argued in the brief, she could have been flexing the shoes. And I think here's the kicker. Barlinda Witherspoon was the other prosecution witness. She was an accomplice. She flipped and testified against Ms. Granite. So the only two witnesses were the store security officer and Barlinda Witherspoon. Barlinda Witherspoon admitted that she removed a security device from a pair of shoes while she was in the store. Ms. Granite denied that she removed a security tag. Mr. Davidson, the store security officer, testified he found one security tag in the shoe department of the store after the women left. Well, I think that that shows that the security tag he found was probably the one admittedly removed by Ms. Witherspoon and not the one purportedly removed by my client. If he had found two security tags, Justice Steigman, I think it would be a different story. But actually, him having only found one makes the state's case even weaker. Did your client testify? Yes. And what was her explanation for what she was doing there and what had happened in the store? A group of women decided to go to the TJ Maxx store. They drove there. She went into the store with the other women. Barlinda Witherspoon, the accomplice who testified for the state, admitted that she was the only one who was in possession of the cart that was wheeled around the store. Ms. Granite said, I went into the store with the other women. I was doing some shopping. I picked up a pair of shoes and I looked at them. I was thinking about buying them because they were cute. She also said she took a shirt and placed it on the cart. And she didn't purchase the shirt ultimately because she couldn't find a pair of pants that matched the shirt. That was her explanation for what she did in the store. And then she said, I didn't see anybody else buy anything or take anything or steal anything. And we left the store and I got into the waiting car and I turned around. Did she run as she left the store? The store security officer said he chased the women. But he didn't specify which women were running and which weren't. My client testified that she had already gotten to the car and was in the car when she turned and saw Mr. Davidson chasing the other two women. But, you know, I suggest even if Mr. Davidson saw my client running, that simply, well, that wouldn't even be enough to support a conviction, let alone make the evidence overwhelming. We've cited Eble v. Perez that says presence and flight isn't sufficient to convict. And, again, we're not arguing reasonable doubt. This court can look at this evidence and say this was sufficient to convict. But I don't think this court can conclude that the evidence is so overwhelming that it rendered this inadmissible testimony harmless. And we rely heavily on Eble v. Lewis, which this court decided in 1995. And in that case, it's very similar. A prosecution witness who was a police officer gave unsolicited, unresponsive testimony that a victim had offered to take a polygraph. The trial judge sustained defense counsel's objection. The trial judge instructed the jurors to disregard. And the trial judge struck the answer from the record. And the prosecutor didn't mention that in closing argument, Justice Cook. And there was no other testimony. It was just as isolated an incident as occurred in this case. And this court on appeal said, we sympathize with the trial judge. He was in a bit of a dilemma. He had to figure out if something short of a mistrial would suffice. The trial judge thought it did, but this court thought it didn't. And this court held that despite the trial court's remedial actions, the trial court had abused its discretion in denying a mistrial. I really don't see any difference between Lewis and this case. The only difference is that it was polygraph evidence in that case and inadmissible hearsay prejudicial other crimes evidence in this case. And I think there is some evidence that is irreparably prejudicial categorically, such as polygraph evidence in the Lewis case. There's some inadmissible evidence that's irreparably prejudicial in context. And I think that's what the retail theft ring in this testimony was in this case. Based on this record, I think when Officer Rolfes took the stand and said, I was told by the store security officer that Ms. Grainer was part of a retail theft ring that hit this same store several times, that was game, set, match. This case was over at that point. I don't think there is anything that could have wiped that out of the jurors' minds. And because it was so central to the defense theory of innocence in this case, that Ms. Grainer didn't know the other women were there to steal, that that testimony completely undermined the defense in this case. When the defense counsel decided not to have an instruction from the judge that this evidence should not be considered, didn't the defense counsel do that because he didn't think it was that noticeable? No. As a matter of fact, I think it was the opposite. The trial judge said, counsel, do you want me to instruct the jurors to disregard? And the judge even said, you know, some lawyers want me to do it. Other lawyers don't want me to do it because it would highlight it. And defense counsel said, well, I really don't want you to do it. I think what counsel's belief was, this would be a useless act. There is nothing you can do, judge, that is going to wipe this from the jurors' minds. So it would be a useless act. The only thing it might do is highlight it. Right. Well, if it's not that big a deal, maybe you don't want the instruction because it would highlight it. Well, here's the other thing, I think, Justice Cook, that shows that counsel thought it was a big deal. This wasn't something that came up at trial. This came up before trial. Defense counsel read the discovery and saw this in the discovery and did a pretrial motion to eliminate. He knew how prejudicial this was. He knew that if the jurors heard this, his client was going to be convicted. So counsel thought this was a huge enough deal to seek a pretrial ruling from the judge. And when Officer Ross said it, defense counsel objected. There was a recess and counsel said, judge, there you go. This is exactly what we were trying to prevent. Now it's happened, and my client has no chance of getting a fair trial. So I think counsel was thinking, you know, why instruct the jury? It's not going to do any good, and it may hurt. And in Lewis, which I said … It was something that's really noticeable. I would think you would say, yeah, I like the instruction. I think this is pretty serious. And the idea that the jury would ignore what the judge tells them to do? The judge says, I want you to ignore that remark about the group, that she was previously a part of a group. The idea that the jury would ignore that, I think it's a balancing thing. Do you want the ultimate weapon, the instruction, to ignore, or do you want to just pass over? I don't think counsel wanted it just passed over. I think what counsel wanted was his client to get a new trial because he knew this trial had been irreparably tainted. Of course. Every lawyer we've ever seen wants to win their case. There's no question, Justice Cook, that we rely on jury instructions all the time, and we rely on jurors following their instructions. And as a general matter, I think that's correct. But as I said at the beginning, there are those rare cases, and there are those cases such as Lewis, in which the judge not only instructed the jurors to disregard, but struck the answer from the record. So I think there are those rare cases in which it's just too much to ask of jurors to ignore something that is so central to the case. And we also cited People v. Gregory from the Illinois Supreme Court in which the court said jurors aren't robots. We can't expect jurors to ignore everything. And sometimes, Justice Cook, every once in a while there's a case in which the right thing to do is grant a mistrial because the jury is irreparably tainted. The Illinois Supreme Court has recognized those rare cases. This court has recognized those rare cases. And I think because everybody in the trial court recognized how prejudicial this would be, that it was ordered excluded from evidence before trial. And this was a very short trial. This was the first day of trial. It wasn't like a long trial where the court had to weigh, you know, judicial economy or starting over in the expense of a lengthy trial. This wasn't a trial where there was going to be ten more days of testimony, and the jurors could well have forgotten this. This was a very short trial with inadmissible prejudicial testimony that completely undermined the defense in the case. And we would just urge this court to find that this is one of those rare cases in which nothing could have been done to save it. Mistrials happen. This should have been a mistrial. And unless the court has any questions, thank you very much for your attention. Thank you, counsel. You will have rebuttal. Mr. Doty. May it please the court, Mr. Hoffman. Initially, I'd just like to correct a statement in my brief, if I could. And this is on page 14 and 15. The statement in the brief is, if evidence of other crimes is offered in contravention of the trial court's ruling on a motion to eliminate, such error may generally be cured by sustaining defendant's objection and instructing the jury to disregard the statement. That language comes from people like Phillips, which is cited in the brief. However, people like Hall, which is also cited in the brief, uses the word or. So the appropriate statement should be or, as opposed to and. As far as going to the merits of the case, I would like to discuss what is an evidentiary detail, which I normally don't discuss in oral argument. However, since it was raised in oral argument, I will mention it here. And that is the issue relative to the tag, the security tag, which the security officer, Sean Davison, found in the shoe pile. Marlinda Witherspoon did testify that she took a pair of shoes, removed the security tags, and placed the shoes in the cart. As I recall the evidence, and as I summarize the evidence in the brief, she also testified that she ditched the tags elsewhere in the store. So assuming that is correct, then the tag that was found there would not have been the tag which was ditched, so to speak, by Marlinda Witherspoon. This would indicate that the concept that it was that tag was contradicted by Witherspoon's testimony. Again, an evidentiary detail, but I thought I should mention it because that issue did come up. Beyond that, in terms of the general merits of the case, this was a brief and isolated statement, as has been brought out. Let me ask you this. Mr. Hoffman is correct, is he not, that this was the very subject of the motion lemonade and what the council was concerned about in advance of trial? Yes, that is correct. And it was the Cato police officer who testified, essentially volunteered the information about how the suspect was part of a retail theft ring, which had hit this store several times? That is correct. So is it, as the defense argues, a matter of the prosecutor's failure to sufficiently prepare his witnesses to avoid this subject, or is this volunteered by the cop, despite that, to dirty up the defendant? The record is not clear if the prosecutor admonished the police officer on this particular point or not. So it isn't clear on that, if I'm being responsive to your question. Well, when this matter came up in a hearing out of the presence of the jury, shouldn't the prosecutor have addressed it? So, Judge, I talked to this guy and I told him to avoid the subject. He did not make that statement. Does that suggest that maybe he never admonished him in the first place? I mean, I don't know if we can come to that conclusion, whether he may have felt it was better not to say, I told the officer not to say this and the officer said it, or to just move on with the trial. I can't answer that question. Well, I suppose the question is this. This is a case of awful strong evidence by the state. On the other hand, what occurred here is a troubling business, maybe not the same way and same degree as in Lewis, but troubling. Guilty people are entitled to fair trials too, there's no doubt to be. So, what should be done about this situation? I mean, I think given the evidence in this case, this is a case where the verdict is safe. This is not a case where an innocent person was convicted. Consequently, I would suggest that the appropriate remedy would be to confirm the trial verdict. Now, as far as the police officer is concerned, I don't know that, you know, that that's, I think that's beyond the scope of anything that we can do here. So, we're just stuck with this conduct, especially if this guy, it's, I suppose, picking up on Mr. Hoffman's point, it's hard to believe that an experienced cop would not understand how damaging this could be. Yeah. I can't answer why the police officer said what he did. I mean, the comment was, in total, while speaking with Mr. Davidson, the manager, he advised me that the suspects acted. He advised that they were part of a retail theft ring and so forth. This does not appear to be something where the police officer was a direct, or excuse me, intentionally, so to speak, trying to inject this information. Well, it was a non-responsive answer, though. I'm sorry? It was a non-responsive answer to the question asked. It was a non-responsive answer. Well, are you sure it was non-responsive? The question was very broad. Are you familiar with People's Exhibit 2? Yes, sir. How? Well, I was told that we'd had a bunch of retail thefts here. You know, it was not a specific question. It was a very broad question. It was a very broad question. It was a broad question, yes. So how can we say it's non-responsive? Well, certainly there is nothing in this question to suggest that this would be the response that came back. I mean, we were talking about, you know, how are you familiar with People's Exhibit 2, if I remember, which is a photograph of a stolen property. And so it is an unexpected, let's call it, response, what I would consider to be a totally unexpected response. And so is Prop 45. Would there be any further questions or items that you would wish? Doesn't look like it. Thank you, counsel. Rebuttal, please. Yes, thank you, Justice Bernstein. With regard to the evidentiary detail counsel mentioned, it's true that Barlinda Witherspoon said she ditched the tag. I don't believe she said I ditched the tag elsewhere in the store. I believe she said she ditched the tag in the store. But whether she did it there or elsewhere really doesn't matter. The point is Mr. Davidson only found one tag, and Barlinda Witherspoon admitted she took a tag. With regard to whether this was the fault of the prosecutor or the police officer, I don't think it really matters. There's only two possibilities here. Either the prosecutor failed to admonish his witness, not to mention this particular statement, and then the prosecutor failed in his duty, or the prosecutor did admonish the witness and the witness decided he didn't care. Either way, it inures to the prejudice of the defendant. And Justice Cook, as to whether the answer was responsive, it is a very broad question. However, People's Exhibit 2 wasn't the photograph of the stolen evidence. People's Exhibit 2, I believe, was a photograph of the empty cart that was left in the store. And it may have been a broad question, but I don't think anyone would believe that the response to the question was, well, I was told it was a retail theft ring. And as Justice Steigman pointed out, as in Lewis, this is an experienced police officer. This court made a big point of that in Lewis, that an experienced police officer should know better, and I think this police officer should have known better. And, again, whether it was a responsive answer or a nonresponsive answer, the fact is it was a prejudicial answer. I'm reading the answer again more carefully. He doesn't mention your client. He just says the suspects acted as part of a retail theft ring. He doesn't mention her specifically, but obviously she was one of the suspects. Well, but isn't it clear that a group of these women were stealing stuff? The only thing that's clear in this case, Justice Cook, is that Barlinda Witherspoon stole items from the TJ Maxx store. And I think this court, when it looks at the evidence, Barlinda Witherspoon was the only person in charge of the cart. Barlinda Witherspoon admitted that she stole items. Barlinda Witherspoon is the only person in the car who, when it was stopped by police, tried to run. So, yes, the only definitive evidence is that Barlinda Witherspoon stole items. The only evidence that my client stole anything was Barlinda Witherspoon's own testimony, the accomplice witness, who said, I saw her put a pair of shoes in her purse. Well, it's not the only evidence. We've talked about that before. That's true. It's not the only evidence. It's the only specific evidence. There's two pieces of evidence against my client that are direct rather than circumstantial. Mr. Davidson said he saw her remove a tag. We know that's questionable because Mr. Davidson only found one tag. And the evidence from Barlinda Witherspoon. And, again, evidence can be sufficient to convict. The question here is, is it so overwhelming that it rendered the error harmless? And I would submit it simply can't. This was a credibility case. The prosecutor admitted, argued as much in closing. He said, who do you believe? Do you believe Barlinda Witherspoon or do you believe the defendant? And I think when the jurors are thinking about that, well, we believe Barlinda Witherspoon because this was a retail theft ring. And another thing we pointed out in our briefs, even though it isn't prejudicial in and of itself, the prosecutor also brought out, when he put Barlinda Witherspoon on the stand, she had prior convictions for aggravated battery, DUI, and, by the way, three retail theft convictions. Now, even though that wasn't prejudicial in and of itself, I think it magnified the prejudice because the jurors would think, gee, Barlinda Witherspoon has been convicted of retail theft in the past. We heard that this is all part of a retail theft ring. Did the defendant know these women were going to steal things from the TJ Maxx when she went to the store? She says no, but, gee, they're part of a retail theft ring, and we know that because Barlinda Witherspoon's been convicted. I think the whole thing tainted this trial. And, Justice Steigman, I don't think this court is stuck with what happened. Obviously, this court has the power to say that the trial court abused its discretion in failing to grant a mistrial under the specific circumstances of this case. You don't argue there's error in admitting Witherspoon's prior convictions for retail theft? No, it's not an error in and of itself. I'm simply arguing that it tended to magnify the prejudice of the error that did occur. And, you know, one wonders, why did the prosecutor put in three, excuse me, two prior convictions of Witherspoon for aggravated battery and DUI? It seems to me that's sufficient to establish her lack of credibility, and I see that my time is up. Well, no, clearly not. She's the state's witness. If he didn't expose all the dirty linen in her background, you don't have to guess what the cross-examination is going to be like. I think he could have brought out the aggravated battery and the DUI. And leave it for, but that's not all, is it, Ms. Witherspoon? Mr. Prosecutor didn't bring out these other convictions, did he, in his questioning to you? You know, you're right, Justice Steigman. I wonder, under the circumstances of this case, if counsel would have thought, gee, maybe I better not go near Carlinda Witherspoon's retail thefts. She's already admitted she stole in this case. Thank you very much. Thanks to both of you.